The Honorable James T. Jordan State Representative P.O. Box 518 Monticello, Arkansas 71655-0518
Dear Representative Jordan:
This official Attorney General opinion is issued in response to certain questions, presented during your term as state representative, regarding the liability of regional solid waste management board members in connection with the purchase and operation of permitted sanitary landfills. You note that the members of the board are representatives of cities and counties within the region. You have presented the following specific questions:
 (1) Absent conscious participation in a violation of state or federal laws governing permitted sanitary landfills, may civil or criminal liability be imposed on the members of a regional solid waste management board for such violations simply by virtue of the fact that the board owns the landfill and operates it through public employees or by contract with one or more private entities?
 (2) May the constituent cities and counties be held liable for decisions, actions, and inactions of the board in the ownership or operation of the landfill?
 (3) If a city or county within the region, with the consent of the board, makes no use of the board's landfill, can that city or county be held liable for financial obligations incurred by the board in connection with the landfill (including but not limited to debt obligations incurred to finance its acquisition, construction and maintenance)?
 (4) Assuming that the bond market permits it, may the board issue bonds to finance the acquisition and construction of a landfill and specifically limit the recourse of the bondholders to any assets of the board, such as the landfill, and any revenues from that facility? (That is, can the constituent cities and counties avoid any liability for such debt?)
 (5) May the board purchase and/or construct a landfill which it owns and contract with public, private for-profit, or non-profit entities to actually operate the facility (or to administer phases of the operation, such as financial management)?
RESPONSE
Question 1 — Absent conscious participation in a violation of state orfederal laws governing permitted sanitary landfills, may civil orcriminal liability be imposed on the members of a regional solid wastemanagement board for such violations simply by virtue of the fact thatthe board owns the landfill and operates it, through public employees orby contract with one or more private entities?
The answer to this question will depend upon the nature of the particular violation in question. Generally speaking, however, it is my opinion that: (1) Board members can be held liable for civil damages for malicious acts, and for nonmalicious acts to the extent that such nonmalicious acts are covered by liability insurance; (2) They are exempted from civil liability for nonmalicious acts that are not covered by liability insurance; (3) They are explicitly exempted from liability in connection with bonds issued by the district and contracts entered into by the district; and (4) Whether they can be held criminally liable will depend on the mental state that is required for proof of the particular crime charged. See generally Op. Att'y Gen. No. 92-158.[1]
Various statutory provisions may be applicable to your question, depending upon the nature of the particular violation in question.
One such statute is A.C.A. § 19-10-305, which grants general immunity to state officers and employees. It states:
 (a) Officers and employees of the State of Arkansas are immune from liability and from suit, except to the extent that they may be covered by liability insurance, for damages for acts or omissions, other than malicious acts or omissions, occurring within the course and scope of their employment.
A.C.A. § 19-10-305(a).
I have previously interpreted this provision to be applicable to members of regional solid waste management district boards. See Op. Att'y Gen. No. 92-158.
It should be noted that the above-quoted grant of immunity applies generally to nonmalicious acts, but that it contains an exception to the extent of liability insurance coverage. Therefore, while board members generally cannot be held liable for nonmalicious acts, they can be held liable for such acts to the extent that such acts are covered by liability insurance. They can also, of course, be held liable for malicious acts. See Carter v. Bush, 283 Ark. 16, 677 S.W.2d 837 (1984).
Political subdivisions are similarly granted immunity from liability in A.C.A. § 21-9-301, which states:
 It is declared to be the public policy of the State of Arkansas that all counties, municipal corporations, school districts, special improvement districts, and all other political subdivisions of the state shall be immune from liability and from suit for damages, except to the extent that they may be covered by liability insurance. No tort action shall lie against any such political subdivision because of the acts of its agents and employees.
A.C.A. § 21-9-301. This provision has been applied only in situations involving tort liability. Like A.C.A. § 19-10-305(a), it also contains an exception for claims covered by liability insurance.
Another statute that may be applicable to your question is A.C.A. §8-6-807, under the provisions of which members of regional solid waste management district boards are explicitly exempted from liability for any damages sustained in connection with certain bonds issued by the district and in connection with contracts entered into by the district. More specifically, the statute states in pertinent part:
 (a) It shall be plainly stated on the face of each bond that it has been issued under the provisions of this subchapter, that the bonds are obligations only of the district.
 (b) No member of the board shall be personally liable on the bonds or for any damages sustained by anyone in connection with any contracts entered into in carrying out the purpose and intent of this subchapter unless he shall have acted with corrupt intent.
A.C.A. § 8-6-807.
The above-quoted statute is the only Arkansas law that specifically exempts the members of regional solid waste management districts from liability of any nature. This statute only applies to damages sustained in connection with bonds and contracts.
It should be noted that the three grants of immunity from liability that are set forth in the above-quoted statutory provisions create exemptions from civil liability only — not criminal liability. It is true that in most instances, the absence of malice or corrupt intent that is required by A.C.A. § 19-10-305 and by A.C.A. § 8-6-807 would tend to preclude the possibility of criminal liability because it would indicate the absence of criminal intent or mental state. However, that is not necessarily the case in all instances. It is conceivable that a board member could act without malice and still have the level of mental state that is required for the proof of certain criminal charges (e.g., those based upon a negligent mental state).
Because the possibility of criminal liability therefore will depend upon the particular mental state that is required in order to prove the specific charge, I am unable to opine conclusively with regard to the question of individual board members' criminal liability.
Question 2 — May the constituent cities and counties be held liable fordecisions, actions, and inactions of the board in the ownership oroperation of the landfill?
The answer to this question will depend upon the particular claim that is made.
If the claim is one for tort damages, it is my opinion that the situation will be governed by the provisions of A.C.A. § 21-9-301, quoted above. Under these provisions, political subdivisions such as cities and counties cannot be held liable for civil claims, except to the extent that they are covered by liability insurance.
If the claim arises out of the issuance of bonds by the district, or out of a contract entered into by the district, it is my opinion that the situation will be governed by the provisions of A.C.A. § 8-6-807, which provide that bond obligations are obligations only of the board, and that board members will not be held liable for damages sustained in connection with the issuance of bonds by the board or in connection with contracts entered into by the board.
Whether the constituent cities and counties who are represented on the board can be held liable for other claims not governed by A.C.A. §8-6-807 or by A.C.A. § 21-9-301 will depend upon the nature of the claim and of the particular facts and circumstances out of which the claim arose. For this reason, I cannot opine broadly and generally with regard to the disposition of any and all claims resulting from the board's actions, that might be levied against the cities and counties who are represented on the board.
Question 3 — If a city or county within the region, with the consent ofthe board, makes no use of the board's landfill, can that city or countybe held liable for financial obligations incurred by the board inconnection with the landfill, including but not limited to debtobligations incurred to finance its acquisition, construction andmaintenance?
Again, the answer to this question will depend upon the particular circumstances out of which the claim in question arose. It is my opinion, however, that the question of the cities' and counties' liability will not turn on the sole issue of whether or not they use the board's facilities.
If the "financial obligations" and "debt obligations" to which your question refers arose in connection with the issuance of bonds by the board, or in connection with contracts entered into by the board, the cities and counties who are represented on the board, pursuant to A.C.A. § 8-6-807, cannot be held liable for the obligations.
Again, if the claimed financial obligation is one arising out of tortious conduct, the cities and counties will be exempt from liability under the provisions of A.C.A. § 21-9-301, as discussed above.
However, the situation about which you are inquiring could involve numerous other circumstances not addressed by A.C.A. § 8-6-807 or by A.C.A. § 21-9-301, in which case an evaluation of the particular facts of the situation would be necessary in order to determine the cities' and counties' exposure. Because of the fact-specific nature of such an inquiry, I cannot opine definitively in response to this question.
Question 4 — Assuming that the bond market permits it, may the boardissue bonds to finance the acquisition and construction of a landfill andspecifically limit the recourse of the bondholders to any assets of theboard, such as the landfill, and any revenues from that facility? (Thatis, can the constituent cities and counties avoid any liability for suchdebt?)
It is my opinion that the board may issue bonds that limit the recourse of bondholders in the manner that you describe. For this reason, as well as for the reason stated in response to Question 3 above, it is my opinion that the constituent cities and counties can avoid liability for such debt.
First, as indicated previously, all bonds issued by the district are, by law, "obligations only of the district." A.C.A. § 8-6-807.
As to the recourse on that obligation that is available to bondholders, the board is given explicit authority to delineate such recourse. That authority is set forth in A.C.A. § 8-6-804.
Under that statute, the issuance of bonds is to be by resolution of the board. The board's resolution must set forth the desired limitations. The statute provides that the bonds
 may contain such terms, covenants, and conditions as the resolution may provide, including, without limitation, those pertaining to the custody and application of the proceeds of the bonds, the collection and disposition of revenues, the maintenance of various funds and reserves, the investing and reinvesting of any moneys during periods not needed for authorized purposes, the nature and extent of the security, the rights, duties, and obligations of the district and the trustee for the holders or registered owners of the bonds, and the rights of the holders or registered owners of the bonds.
A.C.A. § 8-6-804(b)(2) (emphasis added).
The above-quoted provision plainly allows the board to determine the extent of the recourse that will be available to the holders of bonds issued by the board. A limitation such as the one that you described would clearly fall within the board's authority to impose, as well as within the law's requirement that bonds be obligations only of the district.
Question 5 — May the board purchase and/or construct a landfill which itowns and contract with public, private for-profit, or non-profit entitiesto actually operate the facility (or to administer phases of theoperation, such as financial management)?
It is my opinion that the board may contract with public, private for-profit, or non-profit entities to operate a facility owned by the district (or to administer phases of the operation of that facility).
I base this conclusion upon various statutory provisions.
First, the language of the statute under which regional solid waste management districts are authorized to own solid waste facilities (A.C.A. § 8-6-711) grants the districts broad discretion regarding the management and operation of such facilities:
 (a) A district is authorized to own, acquire, construct, reconstruct, extend, equip, improve, operate, maintain, sell, lease, contract concerning, or otherwise deal in facilities of any nature necessary or desirable for the control, collection, removal, reduction, disposal, treatment, or other handling of solid waste.
A.C.A. § 8-6-711(a) (emphasis added).
The discretion granted by the above-quoted language is clearly broad enough to encompass the authority of the district to contract with public or private entities for the operation of a facility owned by the district.
Such authority is also reflected in the provisions of A.C.A. § 8-6-704(a) and (b), which state in part:
 (a) The regional solid waste management boards shall have the following powers and duties:
* * *
 (11) To make and execute contracts and other instruments necessary or convenient in the exercise of the powers and functions of a district, including, but not limited to, entering into contracts and agreements with private entities for provision of services;
* * *
(b) The regional solid waste management boards may:
* * *
 (2) Employ such engineers, architects, attorneys, real estate counselors, appraisers, financial advisors, and other consultants and employees as may be required in the judgment of the district. . . .
A.C.A. § 8-6-704.
Finally, the regional districts' authority to enter into agreements (including agreements to delegate the administrative implementation of the solid waste statutes) is reiterated in A.C.A. § 8-6-709, which states broadly:
 Any regional solid waste management board may enter into agreements for the specific purpose of implementing this subchapter. Any such agreement shall specify the following:
(1) Its duration;
 (2) The precise organization, composition, and nature of any separate legal or administrative entity created thereby, together with the powers delegated thereto, provided such entity may be legally created;
(3) Its purpose or purposes;
 (4) The manner of financing the joint or cooperative undertaking and of establishing and maintaining a budget therefor, provided that such legal entity may incur indebtedness for the lease or purchase of land, equipment, and other expenses necessary to the operation of a solid waste management system or any part thereof;
 (5) The permissible method or methods to be employed in accomplishing the partial or complete termination of the agreement and for disposing of property upon such partial or complete termination;
 (6) The degree to which the joint or individual plans are drawn in accordance with the regional needs assessments required by this subchapter; and
(7) Any other necessary and proper matters.
A.C.A. § 8-6-709.
The above-quoted statutory grants of authority to regional solid waste management districts in connection with the ownership and operation of solid waste facilities are stated in terms that allow the regional district boards wide discretion with regard to such ownership and operation. The plain language of these provisions allows the boards to determine the manner in which they can best implement the purposes of the solid waste statutes and their particular solid waste management plans. This language clearly contemplates that the boards may choose to contract with private (or non-private) entities in connection with such implementation (see A.C.A. § 8-6-704(a)(11)), or that they may choose to employ individuals to assist in the implementation (see A.C.A. §8-6-704(b)(2)). These provisions also clearly contemplate that the boards may choose to delegate the implementation of the solid waste statutes (see A.C.A. § 8-6-709).
On the basis of these unambiguous statutory provisions, I must conclude that regional solid waste management district boards may contract with public, private for-profit, or non-profit entities to operate a facility owned by the district (or to administer phases of the operation of that facility).
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Suzanne Antley.
Sincerely,
WINSTON BRYANT Attorney General
WB:SBA/cyh
[1] Op. Att'y Gen. No. 92-158 discusses the immunity granted by A.C.A. § 8-6-807; A.C.A. § 19-10-305; and A.C.A. § 21-9-301. Both A.C.A. §19-10-305 and A.C.A. § 21-9-301 were amended in 1993 to include an exception from immunity in the event of liability insurance coverage. This exception is discussed following.